UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**LATEEFAH PARROTT,**

      **Plaintiff,**

      v.

**ANDREW SAUL,**
**Commissioner of Social Security,**

      **Defendant.**

**Case No. 2:18-cv-9681**
**Magistrate Judge Norah McCann King**

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Lateefah Parrott for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

**I.    PROCEDURAL HISTORY**

On April 7, 2014, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that she has been disabled since August 15, 2011. R. 208–17. Plaintiff's applications were denied initially and upon reconsideration. R. 125–36, 147–52. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 154–58.

Administrative Law Judge Douglass Alvarado ("ALJ") held a hearing on February 7, 2017, at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert. R. 30–68. In a decision dated April 19, 2017, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from August 15, 2011, the alleged disability onset date, through the date of that decision. R. 14–25. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on March 23, 2018. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On August 28, 2018, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 7.[1] On March 12, 2020, the case was reassigned to the undersigned. ECF No. 26. The matter is now ripe for disposition.

## II.     LEGAL STANDARD

### A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*,

---

[1] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018). Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is

3

overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

**B.     Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through

four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in

6

the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 31 years old on August 15, 2011, her alleged disability onset date. R. 24. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since that date. R. 16.

At step two, the ALJ found that Plaintiff suffers from the following severe impairments: degenerative disc disease, depression, and anxiety disorder. *Id*. The ALJ also found that Plaintiff's diagnosed impairment of HIV-positive was not severe. R. 17.

At step three, the ALJ found that Plaintiff does not suffer an impairment or combination of impairments that meets or medically equals the severity of any Listing. R. 17–18.

At step four, the ALJ found that Plaintiff has the RFC to perform light work subject to various additional limitations. R. 18–24. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a nurse assistant. R. 24.

At step five, the ALJ found that a significant number of jobs–*i.e*., approximately 90,000 jobs as a ticket tagger; approximately 100,000 jobs as an inspector and packager; approximately 100,000 jobs as a labeler–exist in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 25. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from August 15, 2011, her alleged disability onset date, through the date the

administrative decision. R. 25.

Plaintiff disagrees with the ALJ's findings at steps three, four, and five and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Moving Brief,* ECF No. 21. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 25.

## IV.   DISCUSSION

Plaintiff raises a number of challenges to the ALJ's decision, including, *inter alia*, that the ALJ erred at steps three and four of the sequential evaluation as it relates to her physical impairments. *Plaintiff's Moving Brief*, ECF No. 21, pp. 24–26, 35–39. Plaintiff specifically contends that the ALJ failed to properly consider the medical evidence at steps three and four when concluding that Plaintiff's spinal impairments did not meet or medically equal Listing 1.04A,[2] which addresses disorders of the spine, and when crafting the RFC determination. *Id.* Plaintiff's arguments are well taken.

At step three, an ALJ considers whether the combination of the claimant's medically determinable impairments meets or equals the severity of one of the impairments in the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). An impairment meets a listed impairment if it satisfies "'*all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Jones,* 364 F.3d at 504 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original). "A

---

[2] Plaintiff does not argue that she meets or medically equals Listing 1.04B or 1.04C. *Id.* at 25 n.8.

claimant cannot qualify for benefits under the 'equivalence' step by showing that the *overall* functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531 (emphasis added). "[T]he medical criteria defining the listed impairments [are set] at a higher level of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (emphasis in original) (quoting 20 C.F.R. § 416.925(a)). Although an ALJ is not required to use "particular language" when determining whether a claimant meets a listing, the ALJ's discussion must provide for "meaningful review." *Jones*, 364 F.3d at 505 (citing *Burnett*, 220 F.3d at 120). Accordingly, if the ALJ's decision, "read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing," "[t]his discussion satisfies *Burnett*'s requirement that there be sufficient explanation to provide meaningful review of the step three determination." *Id.*

Listing 1.04 addresses disorders of the spine (such as herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. To meet Listing 1.04A, a claimant must demonstrate the following: (1) "evidence of nerve root compression characterized by neuro-anatomic distribution of pain,"[3] (2) "limitation of motion of the spine," (3) "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and,"

---

[3] "'Neuro-anatomic distribution of pain' is generally defined as complaints of pain directly generated by the compromised nerve." *McDaniel v. Colvin*, No. 2:14-CV-28157, 2016 WL 1271509, at *8 (S.D.W. Va. Mar. 31, 2016) (quoting *Cates v. Colvin*, No. 12-CV-111-TLW, 2013 WL 5326516, at *5 (N.D. Okla. Sept. 20, 2013)) (internal quotation marks omitted).

(4) "if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]" *Id*. at § 1.04A.

Here, the ALJ determined at step three that Plaintiff did not meet or medically equal Listing 1.04, reasoning as follows:

> Concerning Listing 1.04 (Disorders of the spine), the claimant has, at times, had some of the clinical signs and symptoms needed to establish listing level nerve root compression (section 1.04A). *However, when muscle weakness has been found on examination, it has not been specifically in a distribution associated with any specific cervical spine nerve root(s) where imaging showed potential for nerve root compression (Exhibits 7F at p. 7 and 9F at p. 4).* Moreover, in July 2016 at the most recent examination of the cervical spine the motor findings were grossly normal (Exhibit 11F, p. 3). Regarding the lumbosacral spine, the record does not reveal positive straight leg raising tests in the supine and seated positions. The record does not document spinal arachnoiditis (section 1.04B) or lumbar spinal stenosis either (section l.04C).

R. 17 (emphasis added).

Plaintiff challenges this evaluation, arguing, *inter alia*, that the ALJ's reasoning regarding muscle weakness constitutes nothing more than the ALJ's lay medical opinion about where nerve root compression should cause muscle weakness. *Plaintiff's Moving Brief*, ECF No. 21, p. 24. In support of her argument, Plaintiff contends that neither of the ALJ's two cited exhibits, *i.e.*, Exhibits 7F at p. 7 (R. 366) and 9F at p. 4 (R. 426), say anything about disharmony between nerve root compression and findings of muscle weakness. *Id*. at 24–25 (citing R. 17, 366, 426). Plaintiff therefore concludes that the ALJ relied solely on his[4] own medical opinion to reject a finding of nerve root compression. *Id*. at 25.

For his part, the Commissioner argues generally that substantial evidence supports the ALJ's step three determination; however, the Commissioner does not specifically respond to

---

[4] Plaintiff mistakenly refers to the ALJ, Douglass Alvarado, as a woman. *Plaintiff's Moving Brief*, ECF No. 21, pp. 24–25.

10

Plaintiff's argument that the ALJ relied on his own lay opinion when assessing this medical evidence. *See Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 25, pp. 5–7.

Plaintiff's argument is well taken. Although the ALJ must consider the medical evidence, "[a]n ALJ may not make purely speculative inferences from medical reports." *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981); *see also Plummer*, 186 F.3d at 429 (same) (citations omitted). "Nor is the ALJ allowed to 'play doctor' by using her own lay opinions to fill evidentiary gaps in the record." *Johnson v. Saul*, No. CV 18-1753, 2020 WL 1285836, at *12 (D. Del. Mar. 18, 2020); *see also LaMontagne v. Colvin*, No. 3:14CV916, 2015 WL 1811681, at *6 (M.D. Pa. Apr. 21, 2015) ("[T]he ALJ is not a doctor and must not substitute her own judgment as to medical issues for actual medical evidence.").

Here, neither Exhibit 7F at p. 7 (R. 366) nor Exhibit 9F at p. 4 (R. 426) explicitly refers to a disconnect between nerve root compression and the muscle weakness associated with that compression. *See* R. 366, 426. In addition, it is unclear on what "imaging" the ALJ intended to rely when he found that Plaintiff's established muscle weakness and nerve root compression were not sufficient to meet Listing 1.04A. R. 17, 366, 426. It therefore appears to this Court that the ALJ's assessment in this regard reflects his own lay opinion. *See Fuoti v. Saul*, No. 3:18CV1119, 2020 WL 1244371, at *4 (M.D. Pa. Mar. 16, 2020) ("Considering the ALJ relied on medical evidence that neither discusses the plaintiff's physical limitations nor clearly contradicts the opinion of the plaintiff's treating physician, we must conclude that it is his 'lay opinion' and interpretation of the plaintiff's medical records.").

Notably, the Court cannot conclude, based on this record, that the ALJ's error in this regard is harmless. *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (finding that error that would not affect the outcome of the case is harmless). Because the ALJ appears to have

11

relied on his own lay opinion when determining that Plaintiff did not meet Listing 1.04A, the Court cannot find that substantial evidence supports his step three determination. *Cf. Knier v. Berryhill*, No. 3:16CV457, 2017 WL 2882289, at *6 (M.D. Pa. July 6, 2017) ("Instead of using resources available to him, the ALJ independently assessed plaintiff's abilities, thereby filling the evidentiary gap with his own opinions unsupported by the medical record. This mistake is reversible error."); *Simmonds v. Astrue*, 872 F. Supp. 2d 351, 358–59 (D. Del. 2012) ("If the conclusion was based on the ALJ's own medical judgment (as it appears to have been), that would be improper. The ALJ may not 'play[ ] doctor.'") (citing *Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006)). This is true even if, ultimately, Plaintiff is unable to demonstrate that she meets the requirements of Listing 1.04A. *Cf. Gamret v. Colvin*, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014) ("'Even if enough evidence exists in the record to support the decision, [the court] cannot uphold it if the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.'") (quoting *Hodes v. Apfel*, 61 F.Supp.2d 798, 806 (N.D. Ill. 1999)) (internal citations omitted). Moreover, as previously discussed, the ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505. Here, where the ALJ appears to have improperly relied on his own lay opinion when assessing Plaintiff's spinal disorders at step three, it is unclear to what extent that error infected the ALJ's consideration of the medical evidence at step four when determining the RFC. R. 17–24. Accordingly, the Court cannot meaningfully review the ALJ's RFC finding and determine whether substantial evidence supports this finding at step four. *See Murphy v. Comm'r of Soc. Sec.*, No. 1:19-CV-20122, 2020 WL 7022746, at *6 (D.N.J. Nov. 30, 2020) ("The ALJ's reliance on this misconception, along with other unsupported mischaracterizations of Plaintiff's physical abilities . . . permeates the ALJ's

decision. As stated above, these errors cannot be separated from the ALJ's analysis of other record evidence such that the Court may determine whether substantial evidence supports the ALJ's RFC analysis."); *Belfon v. Berryhill*, No. CV 1:17-490, 2018 WL 4691049, at *3 (D. Del. Sept. 28, 2018) ("[W]hen incorrect evidence is relied upon, even if other appropriate reasons are given, it is impossible for the court to determine how much the error corrupted the ALJ's determination.") (citations omitted). This Court will not speculate as to how the ALJ reached his decision but will instead remand the matter for further consideration even if, upon further examination of these issues, the ALJ again concludes that Plaintiff is not entitled to benefits. *See Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision."); *cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation.").[5]

---

[5] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Plaintiff's spinal disorders at steps three and four, the Court does not consider those claims.

## V. CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  April 21, 2021                                     *s/Norah McCann King*
                                                             NORAH McCANN KING
                                                        UNITED STATES MAGISTRATE JUDGE